**HUMBLE OIL & REFINING CO. et al. v. POTTER et al.**

No. 9006.

Court of Civil Appeals of Texas. Austin.

June 26, 1940.

Rehearing Denied Sept. 25, 1940.

R. E. Seagler and H. E. Bell, both of Houston, and Powell, Rauhut & Gideon, of Austin, for appellant Humble Oil & Refining Co.

T. L. Foster, of Dallas, and Powell, Rauhut & Gideon, of Austin, for appellant Sun Oil Co.

J. M. Deavenport, of Kilgore, and Pace & Goens, of Tyler, for all appellees except the Railroad Commission and its Members.

Gerald C. Mann, Atty. Gen., and Ed Roy Simmons, Asst. Atty. Gen., for appellee Railroad Commission and its Members.

BAUGH, Justice.

This is a Rule 37 case. The land involved consists of 8.97 acres in Gregg County. It is L-shaped with an overall length of approximately 3,500 feet and a mean width of approximately 100 feet. The Humble Oil Company owns the lease on the lands adjoining its entire length on the west; and the Sun Oil Company a lease on the adjoining lands to the east. The Smith heirs owned title to this strip by limitation prior to the discovery of oil in this field. After such discovery, these heirs in July, 1934, by consent decree, or agreed judgment, in the District Court of Gregg County, partitioned said strip into nine tracts, vesting title to the separate tracts in these heirs severally. Meantime the Sun brought suit against them claiming that this land was included in its prior lease on the lands to the east. This suit was not finally disposed of until December, 1937. Thereafter two wells were drilled, under permits duly granted, on the 8.97 acres; one in September, 1938, on tract No. 8 of the subdivision thereof, and one in November, 1938, on tract No. 6. Thereafter the separate owners of Tracts Nos. 1, 3, 4, 5, 7 and 9 each filed separate applications for one well on each of said subdivisions on the ground that each subdivision was entitled to a separate development, and to prevent confiscation. These applications were all heard together, were protested by the Humble and the Sun; and all six of said applications granted by the Railroad Commission on May 5, 1939. Confiscation was the only ground considered by the Commission, and the Commission manifestly, in view of the drilling density and location of wells on adjacent tracts, based its permit orders on the conclusion that their rule against subdivisions, promulgated on May 29, 1934, did not apply; and that each of the owners of the separate tracts was entitled as a matter of right to develop his own tract separately.

The Sun and the Humble brought statutory suits to set aside all of said six permits and to enjoin production from any wells drilled thereunder. Trial was to the court without a jury and after hearing the trial court sustained the permits for wells on tracts 3 and 9; and cancelled the other four. Only the Sun and the Humble have appealed.

We shall not undertake to discuss all of the contentions made by appellants; but have concluded that the trial court's judgment must be reversed for the reasons hereinafter stated.

It is not controverted that the Smith heirs owned fee simple title to this 8.97-acre tract as far back as 1926. It was not subdivided from the adjacent larger tracts for oil development purposes. No question is raised but that they were entitled to development of the 8.97-acre strip as a whole, separate and apart from the adjacent leaseholds. But it is manifest that the subdivision of this tract in July, 1934, into nine tracts long after the discovery of oil in this immediate area, and after Rule 37 had become applicable thereto, no one of which tracts could be drilled without an exception to the Rule, gave the separate owners of such separate subdivisions no vested right to an exception to the Rule for development purposes. This under the holdings originally made by us in Sun Oil Company v. R. R. Comm., Tex. Civ.App., 68 S.W.2d 609, repeatedly adhered to, approved by the Supreme Court, and promulgated as a rule by the Commission itself, on May 29, 1934.

The partition of the tract by decree of the District Court, agreed to by the parties, was but a voluntary subdivision and gave rise to no new rights thereunder. Humble O. & R. Co. v. Lasseter, Tex.Civ. App., 120 S.W.2d 541. The permits here involved clearly, therefore, cannot be sustained on the grounds upon which the Commission granted them.

The only issue considered by the Commission was that of confiscation. A review here, therefore, is confined to that question. Gulf Land Co. v. Atlantic Ref. Co., 134 Tex. 59, 131 S.W.2d 73. Since the subdivisions, as above indicated, cannot be considered separately; the question of whether confiscation would result without other wells than the two already drilled thereon, must depend upon a consideration of the 8.97-acre tract as a unit, that is, as it existed before the subdivisions were made; and its relationship as a unit to the surrounding tracts.

It affirmatively appears that the Railroad Commission did not so consider it; and did not grant any of the six permits here attacked on that basis. In brief, this question—that is, what additional wells, if any, the 8.97 acres treated as one tract would have been entitled to—has not been presented to nor determined by the Commission. The trial court, as is mani-

fest, took the view that in the light of the facts proven, the 8.97 acres treated as one tract was entitled to two additional wells to protect it against confiscation, and so sustained two of said permits and struck down the other four. And appellees here urge that the evidence was sufficient to sustain an order granting two additional wells on the entire tract. This contention, however, overlooks the fact that the Railroad Commission has never determined, nor been asked to determine, how many wells, if the 8.97 acres be treated as one tract, are necessary to prevent confiscation on such tract; and if any are so needed, where they should be located thereon. These matters are delegated to the Commission for determination; and it is now settled that the courts are without authority to substitute their findings in such matters for those of the Commission, which, in the instant case, have not yet been made. Gulf Land Co. v. Atlantic Refining Co., supra; Shell Pet. Corp. v. Railroad Comm., Tex.Civ.App., 133 S.W.2d 194, writ refused.

Appellants contend, however, that with the two wells already drilled on the 8.97-acre tract, it had a greater density than the surrounding eight times area; that these two wells were draining to the tract, the underground sand strata conditions being substantially uniform, as much or more oil than was being drained from it by appellants' wells; and that under the proration schedules the tract would produce more barrels per acre per day than was being produced from existing wells on appellants' lands. That consequently, as a matter of law and under the facts, all of said permits should have been held invalid by the trial court.

■ This contention of appellants is not sustained. No useful purpose would be served by citation of authorities and review of the rules applicable in determining the relative rights of adjacent leaseholders on the issue of confiscation. The rule was recently restated by us in Ward Oil Corp. v. Overton Ref. Co., Tex.Civ.App., 139 S.W.2d 292, writ refused. The record in the instant case shows that the Sun, one of the appellants here, by suit wherein it claimed to own the leasehold on the 8.97-acre tract itself, prevented any development of this property until the latter part of 1938; that both the Sun and the Humble had, for many years prior thereto, through wells within drainage distance on each side of this strip of land, been extracting large quantities of oil from the pool. It was shown that the Humble has, up to May 1, 1939, extracted through wells on its adjoining 100-acre tract to the west, according to reports filed by it, 6,564 barrels per acre from beneath its tract; and that up to that time the two wells finally drilled on the 8.97 acres had extracted only 350 barrels per acre therefrom. The Sun likewise had been producing for years from its lease adjoining the strip on the east, and had, through its suit against appellees, long delayed and prevented them from recovering any of the oil beneath their lands. It thus becomes manifest that the owners of the 8.97-acre tract have not been given a fair and equal opportunity with their neighbors to recover their fair share of the oil in place beneath their tract. Since all wells in this area were given the same daily allowable, their property rights, not taking into account any question of waste, a matter which the Commission must determine, could be protected in the light of these facts, by giving to them a greater density of drilling on their tract.

Appellees also insist that there was evidence to show that there was greater sand thickness, and hence more oil in place, under this tract than under appellants' tracts; and that since all wells in this area were prorated alike, appellees were entitled on this ground, to a greater density in order to recover their fair share of the oil in place. The evidence on this point is somewhat confusing and it is clear, we think, that the Commission did not consider these matters as grounds for granting said permits. Those matters can be presented to the Commission upon reconsideration by it of appellees' applications, in case they desire to again apply to the Commission for additional wells on the 8.97-acre tract considered as a unit.

■ Having concluded that the Commission granted all of said permits on untenable grounds and in violation of its own rule of May 29, 1934, relating to subdivisions; and that the only legal basis which could sustain, or would authorize, additional wells on the 8.97-acre tract was not considered nor passed upon by the Commission; it follows that all of said six permits so granted fall into the same category. The trial court was without power to substitute its findings for fact findings which the Commission had not made. The whole controversy should, therefore, have re-

verted to the Commission for a reconsideration thereof upon a proper basis. The two permits sustained by the trial court are set aside as invalid, and the cause reversed and remanded to the trial court for such further relief as may be appropriate; but without prejudice to the rights of appellees to again apply to the Commission for additional wells in accord with grounds above stated.

Reversed and remanded.