# G. M. POTTER ET AL V. SUN OIL COMPANY ET AL.

No. A-372. Decided June 27, 1945.
Rehearing overruled October 17, 1945.
(189 S. W., 2d Series, 482.)

*Grover Sellers,* Attorney General, *Fagan Dickson* and *Harris Toler,* Assistants Attorney General, *W. B. Harrell,* of Dallas, *Ernest Goens,* of Austin, and *Ed Roy Simmons,* of Corsicana, for petitioners.

It was error for the Court of Civil Appeals to hold that the conditions existing at the time the case was tried were terminative of the validity of the permits in the suit, and that said court erred in not holding that the said case should be determined according to conditions existing at the time when the Railroad Commission entered its order granting the permits. Magnolia Petroleum Co. v. New Process Production Company, 129 Texas 617, 104 S. W. (2d) 1106; Gulf Land Co. v. Atlantic Refining Co., 134 Texas 59, 131 S. W. (2d) 173; Railroad Commission v. Shell Oil Co., 139 Texas 66, 161 S. W. (2d) 1022.

*J. W. Timmins* and *Martin A. Row,* of Dallas, *Rex G. Baker* and *Nelson Jones,* both of Houston, and *Powell, Wirtz, Raugut & Gideon,* of Austin, for respondents.

Mr. Justice Sharp delivered the opinion of the Court.

This is a Rule 37 case, and involves a much-litigated strip of land containing 8.97 acres, situated in Gregg County, and owned by the Smith heirs and their assigns. Petitioners, G. M. Potter and Fred Birdsong, are owners of the leasehold estate. In 1938 wells Nos. 1 and 2 had been drilled. In December, 1940, petitioners secured permits from the Railroad Commission to drill wells Nos. 3 and 4. Respondents filed this suit in the District Court of Travis County to have the permits for such wells cancelled. Judgment was rendered for petitioners sustaining the action of the Railroad Commission in granting the permits. Respondents appealed to the Court of Civil Appeals, and that court in a majority opinion reversed the judgment of the trial court and ordered the permits for wells Nos. 3 and 4 cancelled, and enjoined further production of oil from these wells. 182 S. W. (2d) 923. A writ of error was granted.

The 8.97-acre tract is L-shaped, having an over-all length of 3,975 feet, situated generally in a north-south direction, with an average width of 130 feet. Humble Oil & Refining Company owns the leasehold estate in the lands adjoining the 8.97-acre tract on its entire west side, and the Sun Oil Company owns a lease on the land adjoining on its east side. When oil was discovered in Gregg County in 1930, the tract in suit was owned by the Smith heirs as tenants in common. In July, 1934, these heirs, by an agreed judgment entered in the District Court of Gregg County, partitioned the strip into nine separte tracts, numbered 1 through 9, vesting title to the tracts in these heirs and their assigns severally.

On August 3, 1934, the Sun Oil Company brought a suit in trespass to try title against the Smith heirs, claiming ownership of the mineral leasehold estate in the 8.97 acres. Final judgment for the Smith heirs was entered in January, 1938. 113 S. W. (2d) 683. During the 44 months this suit was pending, no wells were drilled on the 8.97 acres, although oil was being produced from the adjoining tracts by both the Humble Oil & Refining Company and the Sun Oil Company. The majority opinion of the Court of Civil Appeals states that the loss in production to petitioners during the pendency of this suit was 33,623 barrels of oil.

In the latter part of 1938, after final judgment was entered in the title suit, well No. 1 was drilled on tract No. 8, as numbered in the partition judgment above referred to, and well No. 2 was also drilled on tract No. 8 These wells have since been producing oil. Early in 1939 separate applications were made to the Railroad Commission to drill a well on each of the remaining seven tracts. These applications were heard together, and were protested by both Humble Oil & Refining Company and Sun Oil Company. Six of the permits were granted, and one was denied. Humble Oil & Refining Company and Sun Oil Company brought suit in the District Court of Travis County to have all six permits cancelled. The court cancelled four of the permits, but sustained two. Plaintiffs appealed to the Court of Civil Appeals, and that court reversed the judgment of the trial court, on the ground that under the holding in Sun Oil Company v. Railroad Commission, 68 S. W. (2d) 609, the entire 8.97 acres should be considered as a single tract, rather than as nine separate and distinct tracts, and remanded the cause to the trial court without prejudice to the defendants to again apply to the Railroad Commission for permits to drill additional wells. 143 S. W. (2d) 135.

Pursuant thereto, petitioners Potter and Birdsong again applied to the Railroad Commsision for permits to drill wells Nos. 3 and 4, and permits were granted on December 23, 1940. Wells Nos. 3 and 4 were accordingly subsequently drilled, and have since been producing oil. On March 19, 1941, respondents filed suit in the District Court of Travis County seeking to have the permits for drilling wells Nos. 3 and 4 cancelled and petitioners enjoined from further producing oil therefrom. The trial judge said: "This is a case that presents unusual conditions to my mind * * *. I am going to uphold these permits." On February 18, 1944, judgment was entered that plaintiffs take nothing by their suit. We refer to the majority and dissenting opin-

ions of the Court of Civil Appeals for a more detailed statement of the facts involved in this case.

Petitioners present the following controlling points:

■ That the Court of Civil Appeals erred in holding the judgment in the case of Humble Oil & Refining Company et al v. Potter et al, 143 S. W. (2d) 135, was not res judicata on the issue of the right of the Railroad Commission to consider past production on the tracts of Humble Oil & Refining Company and Sun Oil Company, in comparison with the past production on the Potter tract in suit, in passing on the necessity for the permits in suit to prevent confiscation of property.

2. That the Court of Civil Appeals erred in holding that there was not substantial evidence showing that the 8.97-acre tract needed the two additional wells Nos. 3 and 4 granted by the Railroad Commission's permit order in suit, to recover its fair share of the oil or to give it an equal opportunity with its neighbors to recover its fair share of the oil.

3. That the Court of Civil Appeals erred in holding that the conditions that existed at the time of the trial of this case, and not the conditions existing when the Railroad Commission entered its order granting such permits, were determinative of the validity of the permits involved in this suit.

The case of Humble Oil & Refining Co. et al v. Potter et al, 143 S. W. (2d) 135, involved the question of the partition of the land in controversy and how many wells could be drilled thereon under Rule 37. It seems that the permits granted by the Railroad Commission involved in that suit were based on the sole issue of confiscation, and the Railroad Commission did not take into consideration what the 8.97-acre tract was entitled to as a suit. In the course of the opinion rendered in that case the Court of Civil Appeals said:

"The record in the instant case shows that the Sun, one of the appellants here, by suit wherein it claimed to own the leasehold on the 8.97-acre tract itself, prevented any development of this property until the latter part of 1938; that both the Sun and the Humble had, for many years prior thereto, through wells within drainage distance on each side of this strip of land, been extracting large quantities of oil from the pool. It was shown that the Humble has, up to May 1, 1939, extracted through wells on its adjoining 100-acre tract to the west, according to reports filed by it, 6,564 barrels per acre from beneath its tract;

and that up to that time the two wells finally drilled on the 8.97 acres had extracted only 350 barrels per acre therefrom. The Sun likewise had been producing for years from its lease adjoining the strip on the east, and had, through its suit against appellees, long delayed and prevented them from receiving any of the oil beneath their lands. It thus becomes manifest that the owners of the 8.97-acre tract have not been given a fair and equal opportunity with their neighbors to recover their fair share of the oil in place beneath their tract. Since all wells in this area were given the same daily allowable, their property rights, not taking into account any question of waste, a matter which the Commission must determine, could be protected in the light of these facts, by giving to them a greater density of drilling on their tract."

It appears that the Railroad Commission acted upon the opinion and judgment of the Court of Civil Appeals and exercised its authority and discretion in granting these permits, and that the trial judge, after a full hearing, upheld the action of the Railroad Commission. We do not think the Court of Civil Appeals was justified in this case in overturning the judgment of the trial court which affirmed the judgment of the Railroad Commission.

■ In the case of First State Bank of Temple v. Metropolitan Casualty Insurance Company of New York, 125 Texas 113, 79 S. W. (2d) 835, this Court said:

"Unless it can be said as a matter of law that there was no evidence of probative force to sustain the findings of the trial court, the Court of Civil Appeals was not justified in reversing and rendering the cause. It can become a question of law only when the facts and circumstances are such that but one reasonable conclusion can be drawn therefrom. If the Court of Civil Appeals undertook to substitute its findings of fact for the findings made by the trial court, and rendered final judgment thereon, it would not be authorized to do so, if there was any evidence in the record to sustain the findings made by the trial court. National Bond & Mortgage Co. v. Davis (Tex. Com. App.), 60 S. W. (2d) 429, 432; Galveston, H. & S. A. Ry. Co. v. American Grocery Co., 122 Texas 1, 7, 13, 36 S. W. (2d) 985, 990."

In the recent case of Cornelius et al v. Harrell, 143 Texas, 509, 186 S. W. (2d) 961, this Court, in speaking of the power of the Railroad Commission to administer the oil and gas statutes of this State, said:

"The Railroad Commission is not required in administering the oil and gas statutes to be absolutely accurrate in its rules and orders. This would be impossible. It is the duty of the Commission to treat all interested parties justly and impartially, and the actions and rulings of the Commission in attempting to accomplish such results will not be disturbed by the courts unless such rules or orders are clearly illegal, unreasonable, or arbitrary." See also Railroad Commission v. Wencker, 140 Texas 527, 168 S. W. (2d) 625.

■ The law authorizes parties dissatisfied with the orders of the Railroad Commission to file suit in the district court to cancel such orders. Article 6049c, sec. 8, Vernon's Annotated Civil Statutes. The district court has the authority to hear proper evidence bearing upon the issues involved, but "the judicial inquiry must be confined to conditions as they existed at the time the Commission acted." Magnolia Petroleum Co. v. New Process Production Co., 129 Texas 617, 104 S. W. (2d) 1106.

■ In view of this record, it is not necessary to decide whether the judgment of the Court of Civil Appeals in the case of Humble Oil & Refining Co. et al v. Potter et al, 143 S. W. (2d) 135, was res judicata of the question involved here. The decision of this case may be placed on the rule that if there is any testimony of probative force to sustain the order of the Railroad Commission and the judgment of the trial court, it is the duty of the courts to uphold such order and judgment, unless they are clearly illegal, unreasonable, or arbitrary. This record will not justify the holding that the Railroad Commission and the trial court acted illegally, unreasonably, or arbitrarily in this matter.

The judgment of the Court of Civil Appeals is reversed and the injunction issued by that court is dissolved and the judgment of the trial court is affirmed.

Opinion delivered June 27, 1945.

Rehearing overruled October 17, 1945.