**RAILROAD COMMISSION OF TEXAS,**
Appellant,

v.

**The TEXAS COMPANY,** Appellee.

No. 10442.

Court of Civil Appeals of Texas.

Austin.

Jan. 2, 1957.

Rehearing Denied Feb. 20, 1957.

John Ben Shepperd, Atty. Gen., Gordon Thrall, Mert Starnes, Asst. Attys. Gen., Austin. On Motion for Rehearing: Will Wilson, Atty. Gen., James N. Ludlum, First Asst. Atty. Gen., Edward A. Cazares, Asst. Atty. Gen., for appellant.

Robert J. Derby, Houston, W. N. Sands, Fort Worth, Black & Stayton, Austin, for appellee.

HUGHES, Justice.

This is a Rule 37 case in which the Railroad Commission of Texas is appellant and The Texas Company is appellee.

The Texas Company sought an exception to the spacing rules in order to drill Well No. 24 on its 182.8 acre lease in the McElroy field in Crane and Upton Counties. The exception sought was denied by the Commission and granted by the Court below. Confiscation only, and not waste, is involved.

In 1929 The Texas Company purchased from W. A. Landreth an oil and gas lease covering 182.8 acres in the McElroy field. This lease is in the shape of a long, narrow strip, running east and west, approximately 3.77 miles long and 400 feet wide. Then on the lease were 16 producing wells. The Texas Company plugged one of these wells and drilled 7 more. All of the wells on the lease are located on its west 133 acres and all of such wells were drilled under exceptions to the spacing rules for the McElroy field[1] the orders granting the exceptions reciting that they were granted "to prevent confiscation of property."

Prior to 1955 The Texas Company believed that only the west 133 acres of its lease were productive. It acted on such belief by failing to drill the east 50 acres and by failing to include such acreage in any proration unit which if included would have had the effect of enhancing its well allowables since they are partly based upon acreage.

In August 1955, on an adjoining lease, a well was completed at a point 467 feet from the southeast corner of The Texas Company lease and in September, on another adjoining lease, a well was completed at a point 330 feet south of the most easterly portion of the south line of its lease. Each of these wells had a daily potential in excess of 1000 barrels and prove the productivity of the east 50 acres of The Texas Company lease.

The nearest well on The Texas Company lease to the two wells described in the preceding paragraph is located more than a mile from such wells and has a daily potential of 3.2 barrels.

The two neighboring wells offsetting the most easterly portion of the lease of The Texas Company have a total allowable of 342 barrels per calendar day. The total similar allowable of *all* Texas Company wells is 261 barrels.

If the 50 east acres of The Texas Company lease were properly shaped 5 additional wells could be drilled on it without the necessity of seeking an exception. They would fall within the "10 acre spacing rule."

Mr. L. W. Folmar, a petroleum engineer and an employee of The Texas Company testified that the wells producing from his employer's lease will lack 216,000 barrels of producing the oil under such lease at the time of the hearing on the exception here sought. He further testified that the present wells on such lease will drain little if any of the oil under its east 50 acres but that the two neighboring wells, above mentioned, will drain large quantities of oil from beneath such 50 acres.

The testimony of Mr. Folmar as to these matters is undisputed.

---

[1] This rule at all times pertinent here required wells to be drilled 330 feet from lease lines and 660 feet from other wells, commonly called a "10 acre spacing rule."

These facts showing uncompensated drainage prove confiscation as a matter of law. 31–A Tex.Jur. p. 700. We must now appraise the following facts developed by the Commission.

The Texas Company lease has already produced in excess of the oil which originally underlay it.

The Texas Company strip is drilled to a density of one well to 8.3 acres. The average density of adjoining production units and leases is one well to 15.97 acres.

For the month of October 1955, The Texas Company recovered 40.8 barrels of oil per lease acre while the average per acre recovery for adjoining leases was 27.2 barrels.

The 1951 density order[2] for the McElroy field allowed one well to 10 acres and since its adoption no exceptions to it have been granted. The well in suit, if granted, will give The Texas Company one well to 7.9 acres.

That The Texas Company lease has already produced in excess of the amount of oil originally beneath it is inadmissible to defeat the right to this well for two reasons: (1) " * * * The Commission, in administering the conservation laws, deals with situations as they exist at the time its orders are made; and such orders are prospective and not retrospective in operation. * * *" Sun Oil Company v. Potter, Tex.Civ.App. Austin, 182 S.W.2d 923, 928, reversed 144 Tex. 151, 189 S.W.2d 482, but affirming the principle which we have quoted from the opinion of the Court of Civil Appeals. (2) "Beginning with the earliest cases the courts have uniformly held that a leaseholder or owner is entitled to drill for and produce the equivalent of the recoverable oil under his land, and this rule applies to oil which originally lay beneath the land as well as to oil which migrates to the land as the result of physical

conditions and natural laws relating to the fugacious nature of oil." Railroad Commission v. Magnolia Petroleum Company, Tex.Civ.App. Austin, 169 S.W.2d 253, 255.

To say that the drilling of this well should be denied because it will violate the density rule is to ignore the rule that exceptions will be allowed to prevent confiscation. Under this record the well sought comes clearly within the exception.

By way of further comment we wish to emphasize the absence of protest by any neighboring operator or royalty owner and to direct attention to the past action of the Commission which shows it granted The Texas Company 7 additional wells on the west 133 acres of the lease as exceptions in order to prevent confiscation even though such acreage had 15 producing wells before the first exception was granted.

We do not question the propriety of any of those exceptions granted by the Commission but when they are compared with the failure of the Commission to grant the drilling of one well on the east 50 acres which if properly shaped would be entitled to 5 wells without an exception and which had never until recently been considered productive and which had never been dedicated or assigned to any proration unit we are assured that the action of the Trial Court, which we affirm, comports not only with reason but with the previous policy of the Commission.

The foregoing portion of our opinion disposes of the first two points made by the Commission which were to the effect that the order appealed from was supported by substantial evidence and that the court below has disregarded the policy of the Commission in the McElroy field.

The third point is that the court below erred in holding that the Relinquishment Act, Arts. 5369, 5370, V.A.C.S., justified and required its judgment.

2. This order is not in the record. We presume that it provides for an exception to prevent confiscation. If not, however, the law would write such an exception in it.

The Texas Company did plead and prove that its lease was subject to the Relinquishment Act but the Trial Court made no specific ruling in this respect and The Texas Company does not brief the question here. We, therefore, refrain from discussing it except to say that it does not enter into our disposition of this case.

The last two points are directed to that portion of the judgment which gave The Texas Company the right to drill its well at a precise location and directed the Commission to issue such permits, orders etc. necessary to make such right effective, the contention being that these are matters peculiarly within the discretion of the Commission.

We understand and readily agree that in a review of this nature the courts are limited to validating or invalidating the action of the administrative body and that they cannot take over any of its functions. This does not mean, however, that a court's judgment is without practical effect. If, as here, the Commission denies the right to drill, our judgment setting aside such order carries with it the converse of this denial which is the right to drill. That the courts phrase their judgment so as to direct the issuance of permits, orders, etc. merely means that we adopt the system set up by the Commission for evidencing the authority to drill. We do not by the use of such terminology intend to exercise any of the supervisory or discretionary powers or perform any of the duties of the Commission.

As suggested by the Commission the right to drill is one thing and the exact location of the drilling site is another. As to the latter the Commission says it has not exercised its discretion. It does not suggest that there is or could be any controversy regarding the location of this well.

The location of the well as sought is 330 feet from the east line of The Texas Company lease, this distance being within the spacing rule, and 200 feet from the north and south lines of the lease. As thus located the well will serve as an offset to the two highly productive wells on adjoining leases mentioned above. It is these two wells which are draining the oil from beneath the east 50 acres of The Texas Company lease and which is causing confiscation of its oil. A drilling site which would offset these wells would seem to be a most reasonable location.

In the absence of any statement from the Commission that there is or could be any legitimate dispute regarding the location of this well it is our opinion that the point made is too theoretical to require reversal of this cause.

No substantial error appearing the judgment of the Trial Court is affirmed.

Affirmed.

### On Motion for Rehearing

The Commission makes the following statement in its motion for rehearing:

"Once it has been determined that a permit will be granted for drilling of the well, the Commission would decide on the location to be designated keeping in mind the issue of confiscation as well as consideration of the duty delegated to it to prevent waste and to accomplish proper conservation of the State's natural resources. Appellant submits that it has not exercised its authority as to the delegated function of determining the proper location for drilling of said well."

In view of this statement we grant the motion to the extent of modifying the Trial Court's judgment by deleting therefrom and from the permit ordered issued the specific location for drilling the well authorized therein, the well's location to be made by the Commission in accordance with its established practice.

In all other respects the motion is overruled.

Granted in part and in part overruled.