**TEXACO PRODUCING, INC.,**
**Appellant,**

**v.**

**FORTSON OIL COMPANY and Rail-**
**road Commission of Texas,**
**Appellees.**

**No. 3–90–103–CV.**

Court of Appeals of Texas,
Austin.

Oct. 24, 1990.

Rehearing Overruled Dec. 5, 1990.

Philip Whitworth, Scott, Douglass & Luton, Austin, for appellant.

Robert C. Grable, Kelly, Hart & Hallman, Ft. Worth, for Fortson Oil Co.

Jim Mattox, Atty. Gen., Robert L. Seibert, Asst. Atty. Gen., Austin, for R.R. Com'n of Texas.

Before POWERS, CARROLL and EARL W. SMITH,* JJ.

CARROLL, Justice.

Texaco Producing, Inc. and Fortson Oil Company sought reinstatement of canceled allowables for gas wells in the same reservoirs. The Railroad Commission granted Fortson's application and denied Texaco's. Texaco appealed to the district court, which affirmed. We will reverse the district court's judgment affirming the order of the Railroad Commission, and remand the cause to the Railroad Commission for further proceedings.

## THE CONTROVERSY

This appeal presents the question of when the Railroad Commission may treat producers in the same reservoir differently. Texaco and Fortson are the only producers in the two reservoirs involved. The commission assigned allowables to them on the same basis and canceled their unused allowables on the same basis. Subsequently, the commission reinstated Fortson's canceled allowables, but refused to reinstate Texaco's.

Inevitably, the commission's favorable treatment of one producer has a reciprocal negative effect on other producers in the same reservoir. In this case, all of the parties acknowledge that extra production by Fortson will permanently decrease the reserves in the fields and so permanently deprive Texaco of its share of the reserves that Fortson produces. Thus, Fortson's advantage is Texaco's disadvantage.

To justify this difference, the commission and Fortson rely on the distinction between "prorated" and "limited" wells. The commission's rules permit prorated wells to accumulate allowables, but do not allow limited wells to do so. We do not find this distinction compelling. We conclude that the commission's order results in unequal treatment of the producers, is not supported by substantial evidence and is arbitrary and capricious.

## BACKGROUND

Texaco and Fortson are competing for gas reserves in the Long Lake (Rodessa 8600) Field ("Rodessa field") and the Long Lake (Pettet 9300) Field ("Pettet field") in Anderson and Leon Counties. Texaco and Fortson sell their gas to the same purchaser and transport it by the same pipeline.

The commission assigned allowables to both Texaco's and Fortson's wells in accordance with the allowables applicable to each field. An "allowable" is the amount of gas a reservoir or a well is permitted to produce under the commission's proration orders. From March 1987 to March 1988, both Fortson's and Texaco's actual productions for the Pettet and Rodessa fields were significantly lower than their per well allowables, because their purchaser bought substantially less gas than Texaco and Fortson could have produced. Pursuant to commission rules, Texaco's and Fortson's unused allowables were automatically canceled.

In January 1989, when demand for gas increased, Fortson applied to the commission for reinstatement of its canceled allowables. Texaco opposed Fortson's applications, and also filed a conditional application requesting reinstatement of its canceled allowables if Fortson's were reinstated. The commission granted Fortson's ap-

---

* Before Earl W. Smith, Justice (retired), Third Court of Appeals, sitting by assignment. *See*

Tex.Gov't Code Ann. § 74.003 (1988).

plications and reinstated its canceled allowables in perpetuity, but denied Texaco's application. After the commission denied Texaco's motion for rehearing, Texaco appealed the commission's decision to the district court, which affirmed.

Texaco now argues that the commission's decision to grant Fortson's application for reinstatement of canceled allowables but to deny Texaco's conditional application is not supported by substantial evidence, and is arbitrary and capricious. We agree.

### TEXACO'S CORRELATIVE RIGHTS

Texaco applied for reinstatement of its allowables under Statewide Rule 34(k), 16 Tex.Admin.Code § 3.34(k) (West Sept. 1, 1988). Rule 34(k) provides, among other things, for protection of correlative rights where gas proration assignments cause undue hardship. Correlative rights guarantee a mineral interest owner an opportunity to produce a "fair share" of the reserves underlying his land. A producer who demonstrates that reserves underlying his land are being drained, and that he does not have an opportunity to offset that drainage, establishes injury to correlative rights as a matter of law. *See Railroad Comm'n v. Texas Co.*, 298 S.W.2d 666, 667–68 (Tex. Civ.App.1957, writ ref'd n.r.e.).

In this case, Texaco complains that reinstatement of Fortson's canceled allowables will result in drainage that Texaco will be unable to offset. The evidence in support of Texaco's claim of drainage is undisputed: reinstatement of Fortson's canceled allowables enables Fortson to increase production and thereby drain the reserves under Texaco's property. Moreover, the parties do not dispute that Texaco would be powerless to offset this drainage: Fortson's increased production would decrease Texaco's share of reservoir allowable by a corresponding amount, so that all of Texaco's production would be classified as overproduction, forcing Texaco to curtail or even cease operation. *See* Tex.Nat.Res. Code Ann. § 86.090(d) (Supp.1990); 16 Tex. Admin.Code § 3.31(f)(2) (West Supp. April 1, 1990). Thus, Texaco would be powerless to offset drainage, which establishes injury to Texaco's correlative rights as a matter of law.

### PRORATED vs. LIMITED WELLS

Fortson and the commission concede that Fortson's increased production would drain Texaco's share of the reservoir unless Texaco's allowables were also reinstated. They argue, however, that the commission is absolutely precluded from reinstating Texaco's allowables because Texaco's canceled allowables were for limited wells. We disagree.

The wells for which Fortson sought reinstatement of allowables are "prorated" wells. Prorated wells are those that are capable of full production. 16 Tex.Admin. Code § 3.31(f)(1) (West Supp. April 1, 1990). They are assigned a pro rata share of the reservoir's allowable. *Id.* Most of the wells for which Texaco sought reinstatement are "limited" wells, which are not capable of producing to the full extent of their prorated allowables. 16 Tex.Admin. Code § 3.31(f)(4) (West Supp. April 1, 1990). Limited wells are assigned limited allowables based on their production capability. *Id.* Statewide Rule 31(g)(1) expressly provides that limited wells are not allowed to accumulate underproduction. 16 Tex.Admin.Code § 3.31(g)(1) (West Supp. April 1, 1990). Therefore, Fortson and the commission argue, reinstatement of Texaco's canceled allowables is barred.

Fortson and the commission ignore Statewide Rule 34(k), which expressly provides an exception to protect correlative rights if Rule 31 causes undue hardship. 16 Tex. Admin.Code § 3.34(k) (West Sept. 1, 1988). (A similar provision is contained in Statewide Rule 31(h)(1), 16 Tex.Admin.Code § 3.31(h)(1) (West Supp. April 1, 1990).) Therefore, since Texaco applied under Rule 34(k) for an exception to prevent the harsh consequences of Rule 31(g)(1), the distinction between prorated and limited wells, at least in this case, is a distinction without a difference.

## THE OTHER ARGUMENTS

Fortson and the commission present two other arguments to justify treating Fortson and Texaco differently in this case. First, Fortson argues that Texaco overproduced its fair share of the Rodessa field, and so has no correlative rights to protect. Second, the commission and Fortson argue that Texaco is not entitled to relief because its application was speculative and contingent. These arguments are addressed below.

### 1. Fortson's Fair Share Argument

■ Fortson claims its drainage of Texaco will not injure Texaco's correlative rights because Texaco has already produced more than its fair share in the Rodessa field. Fortson contends that Texaco's past "overproduction" entitles Fortson to any advantage it can get. We disagree.

Allowables for the Rodessa and Pettet fields were originally assigned on a surface acreage basis. Under the surface acreage formula, each well's share of production was based on the amount of productive acreage allocated to it. On October 1, 1988, seven months after the relevant period, the commission changed the allocation formula for the Pettet and Rodessa fields from a surface acreage basis to an acre-feet basis. With the acre-feet system, each well's share of production is based on the *volume* of reserves underlying the acreage allocable to that well. Thus, the acre-feet system more accurately correlates the amount a well is allowed to produce with the quantity of reserves underlying the tract. As a result of this change, Fortson's share of current production has been increased.

Applying the acre-feet formula retroactively, Fortson has estimated what Fortson's and Texaco's fair shares would have been had the commission used the acre-feet formula from first production. Comparing the producers' extrapolated fair shares to their actual production, Fortson concludes that Texaco has outproduced its fair share in the Rodessa field. This "overproduction" occurred because Texaco drilled the discovery well in the Rodessa field, and so

began production before Fortson, and because the allowables were originally determined on a surface acreage basis.

Fortson does not suggest that Texaco's advantage resulted from illegal activity. Fortson argues, however, that Texaco's past overproduction of its fair share in the Rodessa field entitles Fortson to a future advantage so that Fortson can vindicate its correlative rights. Thus, Fortson interprets the correlative rights doctrine to guarantee a proportionate share of *all* production from a field.

■ There are two problems with Fortson's argument. For one, the commission's orders must not be "retrospective in operation." *Railroad Comm'n v. Texas Co.*, 298 S.W.2d 666, 668 (Tex.Civ.App.1957, writ ref'd n.r.e.) (producer's production in excess of the oil that originally underlay his land does not defeat producer's right to drill additional well). In determining the parties' correlative rights, the commission must not consider past production. *See Texas Co.*, 298 S.W.2d at 668. We think this rule is especially sound where, as here, the alleged "overproduction" was not illegal, but was in compliance with commission proration orders.

■ In addition, Fortson's argument is contrary to the rule of capture, which modifies a landowner's right to produce a fair share of the reserves underlying his property. *Halbouty v. Railroad Comm'n*, 357 S.W.2d 364, 375 (Tex.1962). A landowner is entitled to all the hydrocarbons he may produce from his property in compliance with conservation rules; the landowner is not restricted to the reserves that *originally* underlay his land. *Halbouty*, 357 S.W.2d at 375. Accordingly, Texaco's past, legal production is not relevant to this case.

### 2. The Contingent Nature of Texaco's Application

■ Second, Fortson and the commission argue that Texaco failed to meet its burden to show that proration rules caused Texaco's hardship. Texaco asserts that it met its burden by proving the prospective effect of reinstatement of Fortson's canceled

allowables. Fortson and the commission contend that Texaco's claim of prospective injury is not sufficient because it is speculative. We conclude that it is not.

Fortson and the commission insist that Texaco's application was purely speculative because Texaco would suffer hardship, if at all, only when Fortson's applications were granted and Fortson produced its reinstated allowables. They insist that the commission could not consider Texaco's complaint about the effect of Fortson's reinstatement because it was unknown whether Fortson's application would be granted. We disagree.

The commission knew the outcome of Fortson's application—it made the decision. Once it did, it could determine the merits of Texaco's application. As discussed above, there was no dispute that reinstatement of Fortson's canceled allowables would injure Texaco's correlative rights. Therefore, the contingent nature of Texaco's application did not make it impossible for the commission to decide it.

## CONCLUSION

An order of the commission must be reversed if it is not supported by substantial evidence or is arbitrary and capricious. Tex.Rev.Civ.Stat.Ann. art. 6252–13a, § 19(e)(5) & (6) (Supp.1990). The reviewing court is concerned not with the *correctness* of the administrative order, but with its *reasonableness. Firemen's and Policemen's Civil Service Comm'n v. Brinkmeyer,* 662 S.W.2d 953, 956 (Tex.1984).

The commission's order is unreasonable in that it results in unequal treatment of the only two producers in the fields involved. The commission could have either granted both producers' applications, or denied both, and protected the parties' correlative rights. Instead, the commission chose the one course of action that was guaranteed to do the most harm. We conclude that the commission's actions were without foundation in law or fact. Accordingly, the commission's actions were not supported by substantial evidence and were arbitrary and capricious.

Texaco's points of error one and two are sustained. Because we resolve this appeal on those points, we will not address Texaco's remaining points of error. The judgment of the district court affirming the order of the Railroad Commission is reversed. This cause is remanded to the Railroad Commission for further proceedings.