**JEFCO, INC., et al., Appellants,**

**v.**

**W. Sale LEWIS, Savings and Loan Commissioner, et al., Appellees.**

**No. 12243.**

Court of Civil Appeals of Texas, Austin.

March 19, 1975.

Rehearing Denied April 16, 1975.

Shannon H. Ratliff, McGinnis, Lochridge & Kilgore, Austin, Frank E. McLain, Turner, Rodgers, Sailers, Jordan & Calloway, Dallas, J. Sam Winters, Mary Joe Carroll, Clark, Thomas, Denius, Winters & Shapiro, Austin, for appellants.

John L. Hill, Atty. Gen., John W. Odam, John H. Banks, Thomas M. Pollan, Asst. Attys. Gen., Austin, Fred B. Werkenthin, Dennis R. Reese, Small, Craig & Werkenthin, Austin, for appellees.

SHANNON, Justice.

The resolution of this appeal turns on whether or not the Savings and Loan Section of the Finance Commission of Texas was empowered to adopt a regulation prohibiting savings associations from giving premiums or other items of value as attractions or inducements for the opening of, adding to, or maintaining minimum balances in, savings accounts. As we are of the opinion that the Section has that authority, we will affirm the judgment of the trial court.

The case comes to this Court as an appeal from an order of the district court of Travis County denying the application of appellants for a temporary injunction. The appellants are Jefco, Inc., Fort Worth Savings and Loan Association, and the Sperry and Hutchinson Company. Appellees are W. Sale Lewis, Savings and Loan Commissioner of Texas, C. E. Bentley, Robert B. Baldwin, III, and James R. Dickson, Jr., in their capacity as members of the Savings and Loan Section of the Finance Commission of Texas. Also appellees here and intervenors in the trial court, are Metropolitan Savings and Loan Association, Dallas, Texas; Southwest Savings Association, Dallas, Texas; and Tarrant Savings Association, Fort Worth, Texas. The Savings and Loan Section of the Finance Commission of Texas will usually be referred to in this opinion as the "Section."

On July 15, 1974, after hearing, the Section adopted the regulation of which appellants complain. The new regulation is in the form of a subsection to § 9.4 of the Rules and Regulations for Savings and Loan Associations, and it became effective on September 15, 1974. The regulation reads as follows:

> "9.4(b) No association shall offer or give as an attraction or inducement for opening or adding to a savings account, certificate of savings or deposit or maintaining a minimum balance therein, any merchandise, premium or other item of value; 'item of value' does not include providing customer services on premise [sic]. Safe deposit facilities, community rooms, club facilities, notary services and travel checks may be offered at no cost or at a reduced rate."

In August of 1974, before the effective date of the new regulation, the appellants filed separate lawsuits in Travis County attacking its validity. Upon motion of the appellee officials, the court consolidated the three causes. In general, appellant Sperry and Hutchinson Company pleaded that it is in the trading stamp business. For a fee Sperry and Hutchinson Company licenses business organizations to issue the familiar "S & H Green Stamps" to their customers who in turn trade in their collections of stamps for merchandise or cash. The purpose of the stamp service is

to permit the subscribing business organizations to increase and maintain their operations by attracting customers and inducing those customers to return and purchase frequently so that they will collect enough stamps to secure their desired merchandise. In the operation of its business appellant pleaded that it contracted to supply its services to a number of savings and loan associations in thirty-three towns and cities in Texas. These associations have allegedly used the green stamp device to promote the opening of new accounts and to attract additional deposits.

Appellant, Jefco, Inc., pleaded that it was in the business of packaging, promoting, and selling merchandising programs to savings and loan associations, among others. Such programs were allegedly designed to promote and maintain deposits by coupling the giving of gift or premium with the depositor's agreement to open, add to, or maintain an account of a certain amount in the savings institution offering such program. The other appellant, Fort Worth Savings and Loan Association, alleged that it gave premiums to attract customers and induce them to open, maintain or add to certificate of savings or deposit accounts with it.

In general, the appellants alleged that the promulgation of the regulation was beyond the statutory power of the Savings and Loan Section, that the regulation was not supported by substantial evidence in the record made before the Savings and Loan Section, and that as to each of them the regulation was in violation of Tex. Const. Art. I, § 3, § 19, and § 26, and Art. II, § 1, Vernon's Ann.St.

During the course of the trial and over the objection of the appellants, the court admitted into evidence the record made in the hearing before the Savings and Loan Section. The appellants' objection was grounded upon the fact that none of the witnesses in that hearing were sworn. In addition to the introduction of the record made in the administrative hearing, the appellants and appellees called a number of witnesses.

Among others, appellants called Jerry F. Simmans, President of Fort Worth Savings and Loan Association, who testified in opposition to the new regulation. His association offered "Green Stamps" as premiums for opening accounts. Simmans attributed the growth in savings in his association to its stamp program. He testified that without stamp giveaways his association could not compete as effectively for savings and he foresaw a substantial loss in savings for his association resulting from the promulgation of the new regulation.

George Adams, President of Parker Square Savings and Loan Association in Wichita Falls, and Roland Tucker, Executive Vice-President of Metropolitan Savings and Loan Association in Dallas, called by the appellees, testified that their associations, before the effective date of the new regulation, had employed giveaway devices to attract more savers. Adams said that his association entered into the giveaway program in order to compete with a local association which was offering "Green Stamps." The pattern in the giving of gifts by the savings and loan associations was that the program usually started with modest gifts, but under the pressure of competition the value of the gifts greatly increased. At the time of the hearing, the premium program for Parker Square Savings and Loan Association cost from $5,000.00 to $7,000.00 each month. Adams' experience was that his association's giveaway program was effective only so long as it "out-did" the gifts of its competition, and only so long as it offered a still more attractive gift each succeeding quarter.

Adams' observation was that he had to order his giveaway merchandise long in advance of the date at which time his association released publicity about a new gift offering. He also testified as to the im-

portance in ordering merchandise which would be likely to appeal to potential depositors. If the association miscalculated as to the tastes of the potential depositors, it might lose the value of the shipment. His association brought a pick-up truck in order to transport the merchandise. It was necessary for the association to rent space in which to store the merchandise. The Parker Square Savings and Loan Association hired an additional employee who spent about ninety percent of his time moving and storing giveaway merchandise.

The regulations of the Federal Home Loan Bank Board provide, in general, that no depositor in an association may receive more than one gift each year from that association. Adams and Tucker testified that the regulation was not enforced by the federal agency and that many savings and loan associations regularly violated that regulation by giving more than one gift each year to some depositors who demanded more.

Both Adams and Tucker were of the opinion that in many instances persons withdrew deposits in one association and put them in another association in order to receive a particularly attractive giveaway or stamp offer from that association. Husbands and wives with a single account frequently withdrew that account and opened two accounts in order to receive more prizes. The evidence was that frequently the depositor who continued to maintain his account in one association could not understand why he was not eligible to receive a gift with the accrual of each quarterly interest payment, and, upon demand, the association would usually present him a gift rather than risk losing his deposit.

The premium-giving associations experienced problems similar to that of the merchandiser. For example, persons on occasion returned prizes given long before, complaining perhaps that the prizes were defective or did not match the color

scheme in the house. Nearly always the association replaced the gift with another since it "could not afford to offend a customer." At Parker Square Savings and Loan Association the teller was instructed to leave his window and accompany the customer to the prize tables, to show the wares. During that time if the other tellers were occupied with the same task or were engaged in the task of receiving deposits, customers wanting to deposit money had to wait until the teller had finished showing the gifts. Metropolitan Savings and Loan Association employed a special employee part-time at its principal office and each branch office who did nothing but wait on the premium table.

Parker Square Savings and Loan Association had its merchandise displayed on three tables in the lobby. Included at one time or another in the gift merchandise displayed at the savings and loan associations were George Washington's cookbook, Mrs. Kennedy's life story, pots, pans, jewelry, blankets, dustpans, towels, dinnerware, picnic baskets, thermos jugs, clocks and decorative candles. One of the exhibits, an advertisement from *The Dallas Morning News,* admitted into evidence for the limited purpose of showing a representative type of advertisement offered by a savings and loan association offering the multiple gifts type of program, showed "exciting gifts" such as a Corning Pie Pan "for producing perfect desserts and lots of compliments"; "dramatic values" such as a Schick Fresh-Air Dispenser to "automatically and continuously make air outdoor fresh"; and "thrilling savings" such as a Clairol "Crazy Curl" Curling Iron which was stated to mean "instant beauty." To obtain these largesses, the advertisement counseled the reader to " . . . transfer your money to [the savings and loan association advertising] from any other financial institution."

Similar advertisements must have produced results. Tucker described that he went to one of his branch associations because the "word" came to him that

" . . . they just had people all over them." The branch office was so swamped with persons waiting to open accounts that the employees "actually had . . . to give people numbers like you used to do in the butcher shop . . . " The first customer Tucker interviewed told him, "Now, before I sit down, I have $10,000.00. Now, I want two premiums, and either you can set up two accounts and give me two premiums or you can open one account, and I take it down the street, but if you do that, I am just going to take both of them down the street." Tucker's reply was, "Sit down. We've got people waiting behind you." And the customer received both premiums.

Examination of Simmans and George C. Pace, who is the "Manager, Incentive Sales Development Nationally" for Sperry and Hutchinson, developed that some individual savings and loan associations benefited directly from having exclusive contractual arrangements with the suppliers of certain premiums. In the twenty-eight or thirty Texas cities and towns in which Sperry and Hutchinson distributed "Green Stamps" to savings and loan associations, only one city had more than one savings and loan association distributing "Green Stamps."

The testimony of Adams and Tucker was similar to that evidence adduced before the Section.

The court entered its order denying appellants' application for a temporary injunction. In that order the court found that appellants had shown probable injury and that the *status quo* to be preserved was the situation existing prior to the effective date of the challenged regulation. The court found further that appellants failed to establish a probable right to recover and that, to the contrary, the regulation was constitutional and a valid exercise of authority lawfully delegated to the Savings and Loan Section of the Finance Commission. In addition, the court was of the

opinion that the order promulgating the regulation was supported by substantial evidence.

Appellants assail the court's judgment on the following grounds: (1) that the regulation was beyond the rule-making authority of the Section; (2) that the regulation was not based upon any statutory standard in violation of the separation of powers provision, Tex.Const. Art. II § 1; (3) that the regulation was beyond the police power of the State, and accordingly, deprived appellants of their property without due course of law, Tex.Const. Art. 1 § 19; (4) that the regulation violates appellants' equal rights, Tex.Const. Art. 1 § 3; and (5) that the order promulgating the regulation was not supported by substantial evidence.

■ We are of the opinion that the challenged regulation is within the rule-making authority of the Savings and Loan Section of the Finance Commission and was a proper exercise of the police power of the State. Vernon's Tex.Rev.Civ.Stat. Ann. Art. 342–114 is the source of the rule-making authority for the Section. That statute provides in part:

"The Savings and Loan Section, through resolutions adopted by not less than two affirmative votes, may promulgate general rules and regulations not inconsistent with the Constitution and Statutes of this State, and from time to time amend the same, which rules and regulations shall be applicable alike to all State associations, and may authorize savings and loan associations organized under the laws of this State to invest their funds in any manner and to the same extent which said association could invest such funds under existing or any future law, rule or regulation were they organized and operating as a Federal Savings and Loan Association under the laws of the United States, provided, however, that this authority shall not be construed in any wise to confer authori-

ty to abridge, or diminish or limit any rights or powers specifically given to State associations by the statutory laws of this State. . . .

\*   \*   \*   \*   \*   \*

"(e) To request information and to make recommendations with respect to matters within the jurisdiction of the Savings and Loan Commissioner as relating to the savings and loan business, including recommendations as to legislation affecting such institutions . . . ."

Appellant Jefco, Inc. argues, correctly, that nowhere in the statute is any specific power granted to the Section with regard to prohibiting premiums or other forms of advertising. Jefco, Inc. claims that the power asserted by the Section must find its basis in the power of an agency under its general rule-making power, to pass regulations necessary to carry out the intent and purposes of the statute. That appellant states that the primary purposes of the Savings and Loan Act are to encourage thrift and the promotion of home ownership. In addition, Jefco, Inc. points out correctly, we think, that an underlying purpose of the Savings and Loan Act is the protection of the solvency of the associations to prevent loss of the public's funds. This appellant then discusses the fact that there had been no showing in the hearing of an association's solvency being endangered through the use of its premium program, and that the use of giveaways stimulates savings. Jefco, Inc. argues, finally, that there was no evidence to show that the giveaways affected the availability of funds for home mortgages.

In addition to the above arguments, appellants Fort Worth Savings and Loan Association and the Sperry and Hutchinson Company claim that the rule-making power of the Section is limited to the subject of investment of funds by the associations. This is so, say these appellants, for the reason that the only specific rule-making authority relates to the investment of

funds and that Section (e) of Art. 342–114 specifically authorizes the Section to make "recommendations as to legislation affecting such institutions." These appellants say that it would be totally inconsistent for the legislature to authorize an agency to make recommendations as to legislation and at the same time grant it rule-making power to promulgate regulations such as the challenged one.

Appellants' argument that the rule-making powers of the Section are to be restrictively construed is foreclosed by Gerst v. Oak Cliff Savings and Loan Association, 432 S.W.2d 702 (Tex.1968). In that case the Supreme Court observed that the provisions of Art. 342–114 grant to the Savings and Loan Section full and complete rule-making power. Contrary to appellants' argument, the rule-making authority of the Section is not limited to rules relating to the investment of funds by associations. The Supreme Court in Gerst v. Oak Cliff Savings and Loan Association, *supra,* sustained the county-line rule which had nothing to do with the investment of funds. Also, the fact that the Section is authorized to recommend legislation is not a limitation upon its rule-making power.

■ The critical factor in determining whether or not an agency has exceeded its rule-making powers is that the regulation must be in harmony with the general objectives of the statute. Gerst v. Oak Cliff Savings and Loan Association, *supra.* As will be later discussed in the part of this opinion concerned with the regulation as a valid exercise of the State's police power, we believe that the challenged regulation is in harmony with the general objectives of the Savings and Loan Act.

Appellants Fort Worth Savings and Loan Association and the Sperry and Hutchinson Company contend that the challenged regulation is in "blatant" violation of Tex.Const. Art. II § 1. These appellants argue that the Constitution permits the delegation of legislative-type rule-mak-

ing only if in making such delegation, the legislature has provided sufficiently definite standards to guide the administrative agency in promulgating the rules. For authority these appellants rely on, among others, Brown v. Humble Oil and Refining Company, 126 Tex. 296, 83 S.W.2d 935 (1935).

Appellees reply, correctly we think, that Gerst v. Oak Cliff Savings and Loan Association, *supra,* illustrates that legislative rule-making may be delegated to administrative agencies so long as the rule-making can be found to be in harmony with the general objectives of the statute passed by the legislature on the subject matter involved. See I Cooper, State Administrative Law, p. 68 (1965).

■ Appellants' due process challenge requires a consideration of the State's police power. It was appellants' burden to demonstrate the regulation to be unconstitutional. Texas State Board of Barber Examiners v. Beaumont Barber College, 454 S.W.2d 729 (Tex.1970). The police power is grounded upon public necessity which alone can justify its exercise. The exercise of the police power hinges upon the public need for safety, health, security, and protection of the general welfare of the community. City of Coleman v. Rhone, 222 S.W.2d 646 (Tex.Civ.App.1949, writ ref'd). As the police power rests in the State, the legislature, by proper grant, may delegate that power to administrative agencies.

■ The wisdom of the exercise of the police power is largely for legislative rather than judicial determination. Courts are reluctant to disturb an exercise of the police power, and will not unless it appears that the regulation was unnecessary and unreasonable. If a difference of opinion may exist as to the necessity and reasonableness of the regulation, the courts will

not invalidate the regulation. City of Coleman v. Rhone, *supra.*

■ The savings and loan business is one affected with a public interest, Brazosport Savings and Loan Association v. American Savings and Loan Association, 161 Tex. 543, 342 S.W.2d 747 (1961), and as such, the State has the authority to limit the nature and scope of savings and loan associations. Tex.Rev.Civ.Stat.Ann. Art. 852a, § 1.03(2) defines a savings and loan association as one whose primary purpose is to promote thrift and home financing and whose principal activity is the lending to its members of money accumulated in savings accounts of its members on the security of first liens on homes and other improved real estate. One of the purposes of the regulation of the savings and loan associations by the statute is to require that such associations devote their energies and resources to the achievement of those public objectives. Another purpose is to require that savings and loan associations do not engage in overzealous competition such as could compromise their financial integrity or result in a lowering of the quality of the savings and loan services which they are obligated to provide.

We are of the opinion that regulation 9.-4(b) is in harmony with the general objectives of the Savings and Loan Act and effectuates the public policy of this State. The regulation is reasonably related to both the immediate and long-range financial integrity of savings and loan associations. As already noticed, the record demonstrates that the giveaway programs were defensive in character and that time, money, and personnel were diverted from serving the purposes of the Savings and Loan Act and into the merchandising aspect of the programs, resulting in a deterioration of the savings and loan services which is harmful in general to the public. The record shows further that contrary to the promotion of thrift individually and the accumulation of money to lend, the giveaway

programs caused an endless movement of deposits within a given association and between associations. This movement of money created an instability of deposits which was hurtful because investments made by savings and loan associations are necessarily long term. The record also showed that the suppliers of especially desirable premiums wield substantial control over the savings and loan industry.

The record does not show any association presently in financial difficulty because of its giveaway program. Nevertheless, the record does show the competitive cycles caused by the bonus programs and the always increasing costs to all associations which engage in those programs. Under these circumstances the Section was not required to wait to exercise its authority until the giveaway programs grew to such an extent that financial difficulties were created for some associations.

■ Appellants complain that the Section's regulation violates equal protection in two respects: (1) the ban on giveaways is applicable only to savings and loan associations and not to banks, credit unions, or other institutions, and (2) the regulation prohibits giveaway premiums, but does not prohibit other kinds of inducements. With respect to appellants' first contention, it was settled early that the State may classify persons, organizations, and corporations according to their business, and may apply different rules to those who belong to different classes. Union Central Life Insurance Company v. Chowning, 86 Tex. 654, 26 S.W. 982 (1894), Supreme Lodge United Benevolent Association v. Johnson, 98 Tex. 1, 81 S.W. 18 (1904). Savings and loan associations, commercial banks, and credit unions are sufficiently different in financial structures, purposes, and functions to warrant separate classification and regulation.

■ With respect to appellants' second equal protection contention, the regulation is valid if it applies uniformly to all of those within a particular class. It is plain that the challenged regulation applies equally to all savings and loan associations coming within the authority of the Savings and Loan Section. As with practically any rule which is applied uniformly to a class, resultant hardships will vary depending upon the individual situation of each member of that class. Such hardships, however, do not render the rule invalid.

■ The foundation of appellants' contention that the order promulgating the regulation was not supported by substantial evidence is that the evidence taken before the Section was not sworn, and hence should not have been admitted by the trial court. As noted in the beginning, appellants objected to the admission into evidence of the record made in the hearing before the Section. In addition, the trial court permitted both appellants and appellees to call a number of witnesses at the trial of the case.

The parties devote a considerable portion of their briefs discussing the type of review to be accorded by the courts to a regulation adopted by the Section. Appellants claim, even though they called witnesses at the trial, that the only evidence to be considered by the court was that which was heard before the Section and since all of that testimony was unsworn, there was nothing before the trial court to sustain the regulation. Appellees reply that the rule-making authority does not come from the Savings and Loan Act and is not controlled by the Sec. 11.12(5)(b) of that Act, but rather that authority is derived from Tex.Rev.Civ.Stat.Ann. Art. 342–114 and 342–205, a part of the Banking Code. Appellees emphasize that Art. 342–205(e) does not even require a hearing unless a sufficient number of savings and loan associations so request. That article also provides that after consideration by the Section of

any relevant matter available from the files and records or presented at any such hearing, any such rule, regulation or amendment approved and adopted pursuant to such hearing shall be promulgated. Appellees argue that Sec. 11.12(5)(b) of the Savings and Loan Act is applicable to those orders which arise from adjudicative or fact finding hearings, unlike the case at bar wherein no fact issues, as such, are to be determined.

We find it unnecessary to determine the contentions of the parties with respect to the type of review to be accorded to the regulation. The only point preserved by appellants in this regard is that the testimony taken in the Section hearing was unsworn. For purposes of this point of error only, we will assume that judicial review in the case at bar is limited to the record made before the Section. Appellant, Fort Worth Savings and Loan Association, has waived any right that it may have had, because of its failure to object to the failure of the Section to require that the witnesses testify under oath at the hearing before the Section. See Trammell v. Mount, 68 Tex. 210, 4 S.W. 377 (Tex. 1887). Both Fort Worth Savings and Loan Association and the Sperry and Hutchinson Company appeared before the Section and presented unsworn testimony. Jefco, Inc. did not. No hearing is required to promulgate rules unless as many as five associations so request. Tex.Rev.Civ.Stat. Ann. Art. 342–205. Since neither Sperry and Hutchinson Company nor Jefco, Inc. had a right to demand a hearing before the Section, as neither was a savings and loan association, we are of the opinion that they did not have a right to require that the testimony be sworn.

We have considered all of appellants' contentions and find them without merit, and accordingly, the judgment will be affirmed.

Affirmed.