**HARDY STREET INVESTORS et al., Appellants,**

v.

**TEXAS WATER RIGHTS COMMISSION, Appellee.**

No. 5521.

Court of Civil Appeals of Texas, Waco.

March 31, 1976.

Rehearing Denied April 29, 1976.

Sears and Burns, C. Charles Dippel, Houston, for appellants.

John L. Hill, Atty. Gen., G. Charles Kobdish, Asst. Atty. Gen., Austin, for appellee.

## OPINION

JAMES, Justice.

This is an appeal from an order of an administrative body, involving the substantial evidence rule.

Plaintiff-Appellants Hardy Street Investors, a partnership, and Kingsbridge Development Corporation challenged an order of Defendant-Appellee Texas Water Rights Commission as being invalid and void because it was not supported by substantial evidence. After review of the facts, the trial court's judgment upheld the validity of the order, from which Plaintiff-Appellants appeal. We affirm.

Inverness Forest Improvement District (hereinafter called "District") applied to Defendant-Appellee Texas Water Rights Commission (hereinafter called "Commission") for its approval of a drainage project and the issuance of $170,000.00 of the District's bonds to finance it, under the provisions of Article 51.421 of the Texas Water Code pertaining to water control and improvement districts. The District is a water control and improvement district operating and existing pursuant to Chapter 51, Texas Water Code, and Article XVI, Section 59, of the Texas Constitution. Plaintiff-Appellants Hardy Street Investors and Kingsbridge Development Corporation each own a tract of land within the District.

The District on May 10, 1974, filed an application to the Commission for approval of an engineering project and the economic feasibility of the issuance of bonds therefor. The application consisted of the engineer's report, several maps, and the plans and specifications for the proposed construction. The application and supporting engineer's report originally requested approval of $125,000 in bonds, but this request was subsequently increased to $170,000 because of revised cost figures. The engineering project as submitted to the Commission was designed to correct a condition of advancing erosion which threatened to destroy and contaminate the District's sewage lift station and water well, as well as destroy the lateral support for a county road.

The District's application and engineering report as submitted to the Commission incorporate into the cost figures a calculation of two (2) years prepaid interest at the rate of 7% per annum. The contract documents involved for the proposed construction work contemplate a sixty calendar day "actual construction period" after the District's engineer has given the contractor written notice to commence work. C. R. Miertschin, Director of the District Division of the Appellee Commission, testified that six months would be a reasonable, actual construction time for the project from the beginning to the completion thereof.

Staff members of the Commission made an on-site inspection on June 5, 1974, and after review of the engineer's report, the Commission determined that two years prepaid interest at 7% per annum was reasonable, as applied for by the District, and in its order approving the project authorized such interest. "Prepaid interest" is an amount of money derived from the actual sale of the bonds which is placed in an interest and sinking fund to meet debt service requirements pending completion and commencement of operation of the facilities being constructed and may not be used for any other purpose by the District.

The Commission's order appealed from is dated September 30, 1974 and in effect approves the District's application in the following language:

"Now Therefore, Be it Resolved by the Texas Water Rights Commission that the

engineering plans, specifications, and estimate of costs in the sum of $170,000 for the project of Inverness Forest Utility District be and the same are hereby approved, and the issuance of $170,000 of bonds for the purpose of financing said improvements in accordance with said plans, specifications, contract documents and engineering reports as filed heretofore with the Commission is hereby approved."

As heretofore stated, the trial court after reviewing the facts held that the Commission's order was "valid and supported by substantial evidence," from which judgment Plaintiff-Appellants appeal asserting in effect that the Commission's order is not supported by substantial evidence.

The crux of Appellants' argument is this: The construction period of the project was sixty days, and in any event not more than six months; yet the project calls for two years interest at 7% per annum; that if six months' interest is allowed instead of two years the project would total only $152,150 instead of $170,000; that the project calls for $17,850 too much interest and therefore that the Commission's order is arbitrary and unreasonable and should be held void. We do not agree with this contention and accordingly overrule Appellant's point of error and affirm the trial court's judgment.

■ This appeal is governed by the substantial evidence rule.. The order of the Defendant-Appellee Texas Water Rights Commission is presumed to be legal and valid, and the burden is on those attacking the order (here, the Plaintiff-Appellants) to show that the order is not reasonably supported by substantial evidence. *City of San Antonio v. Texas Water Commission* (Tex. Sup.1966) 407 S.W.2d 752; *Gibraltar Savings and Loan Association v. Falkner* (Tex. Sup.1963) 371 S.W.2d 548; *Hewlett v. Texas Alcoholic Beverage Comm.* (Waco CA 1973) 492 S.W.2d 686, NRE.

■ The test in determining whether an administrative decision finds reasonable support in substantial evidence is whether the evidence as a whole is such that reasonable minds could not have reached the con-

clusion that the agency must have reached in order to justify its action. *Railroad Commission v. Shell Oil Co.* (1942) 139 Tex. 66, 161 S.W.2d 1022; *Trapp v. Shell Oil Co.* (1946) 145 Tex. 323, 198 S.W.2d 424; *Southern Canal Co. v. State Board of Water Engineers* (1958) 159 Tex. 227, 318 S.W.2d 619; *State ex rel. Blooming Grove I.S.D. v. County Board of School Trustees* (Waco CA 1960) 334 S.W.2d 588, NRE; *Bichsel v. Strickland* (Waco CA 1963) 371 S.W.2d 785, no writ history; *Cruz v. City of San Antonio* (Waco CA 1969) 440 S.W.2d 924, no writ history.

Under the record before us, we cannot say that the Commission's order was not reasonably supported by substantial evidence.

The witness Miertschin (Director of the Districts Division of the Commission) testified that two years interest is a usual and normal part of all engineering projects; that with reference to the length of construction time, there are many variables involved, such as weather and other things some of which are under the control of the contractor and some of which are not. He further testified that the length of time of construction is not controlling upon the staff's consideration and recommendation to the Commission on the amount of prepaid interest, although it is considered along with other things. He said: "This has been discussed by the Commission at length but it is felt like this is something that is needed and is legal." When questioned whether the two years interest was excessive in the light of construction time of sixty days to six months, Miertschin replied: "Let me answer you this way; the District is about to issue additional bonds and thereby have an increase in their debt service requirement. During this interim when they first began to repay an increased amount due to the new bond sale that during this interim period there may very well be a need for some funds in their debt service requirement that they had not anticipated. This is a means of providing the District with insurance that they will be able to meet their debt service requirement

once they sell their bonds." He testified that the prepaid interest money "goes into the interest and sinking fund. Along with the engineer's economic evaluation of this project he has set up a tax evaluation schedule and he has made various projections as to growth within the District. The required taxes are based upon this projected growth. This is always a variable in a district development and should not the growth take place as projected there very well may be not as much money in their interest and sinking fund as they had anticipated."

Article 51.409, Texas Water Code, provides that the District "may issue bonds to include:

(7) the estimated discount on the bonds;

(9) an amount to pay interest on the bonds during the period stated in the engineer's report, which shall not be more than three years from the time the bonds are sold; "

Article 51.410 provides that "the engineer's report shall contain . . . an estimate of the time required to complete the improvements to the degree to which they may provide service."

When we consider the question of reasonableness of the Commission's order, we are impelled to the conclusion that the Commission was dealing with variables and uncertainties as to the amount of interest money needed, and was trying to make sure that there would be enough money on hand to take care of the debt service requirements. In other words, if any error were to be made, the Commission's error was to be on the side of caution.

It is a matter of common knowledge that interest rates fluctuate substantially over a short period of time; that financial market conditions change rapidly and this affects the timing of bond sales; also that actual construction time estimates set out in engineering reports and construction contracts are at best tentative and cannot be taken at face value. Moreover, there is no connection between the time the bonds are sold and the time actual construction begins and ends. As soon as the bonds are sold they begin to earn interest, whether construction is completed or not. Bonds may be sold months in advance of the commencement of construction because of favorable financial market conditions, in which event the District will owe interest regardless of whether construction has begun, is in progress, or is completed.

What the Commission did know was that if they provided for two little interest, the District might eventually default on its bond repayment, or else be forced to impose an excessive tax rate upon its constituents.

■ In the light of this record as a whole, we are of the opinion and hold that the Commission's order is reasonably supported by substantial evidence. As our Supreme Court said in *Marrs v. Railroad Commission* (1944) 142 Tex. 293, 177 S.W.2d 941, regarding administrative orders, "a reasonable margin will be allowed for differences in opinion and errors in judgment."

Judgment of the trial court is affirmed.

AFFIRMED.