**TEXAS HEALTH FACILITIES COMMISSION, Appellant,**

v.

**BAPTIST GENERAL CONVENTION of Texas d/b/a Hendrick Memorial Hospital, Appellee.**

No. 1178.

Court of Civil Appeals of Texas, Tyler.

Oct. 19, 1978.

Rehearing Denied Nov. 16, 1978.

577

Carla J. Cox, Asst. Atty. Gen., Austin, for appellant.

C. Dean Davis, Fred E. Davis, Davis, Davis & Sharp, Austin, for appellee.

McKAY, Justice.

Our opinion dated September 21, 1978, is withdrawn, and the following opinion is substituted therefor.

Appellee, Baptist General Convention of Texas, doing business as Hendrick Memorial Hospital (Hospital) brought this suit against Texas Health Facilities Commission (Commission) seeking to reverse, set aside and hold null and void an order of the Commission denying the application of the Hospital for a Certificate of Need for the construction of five (5) shelled upper floors to its physical therapy/laboratory building addition. The trial court set aside and held for naught the order of the Commission, or-dered the matter remanded to the Commission with instructions to grant the Hospital's application for the Certificate of Need, and the Commission brings this appeal.

The Hospital alleged that it was located in Abilene, Taylor County, Texas, was licensed by the State for 464 beds, and serviced a 19 county area; that it filed an application for authority to construct five (5) upper floors (a total of 75,920 square feet) to the physical therapy/laboratory building, such five floors to be shelled in for later completion according to the needs and growth of the Hospital; that the Hospital's application for a Certificate of Need for the five shelled-in floors was consolidated with three other applications of the Hospital, and that a hearing was conducted on all four applications on August 9, 1976; that the Hospital appeared by its attorneys, produced witnesses and evidence in support of the four applications, and that there were no contesting parties nor interested parties at the hearing held before a hearing officer; that thereafter the hearing officer recommended certain findings of fact, and a finding that as a matter of law the Hospital had not established need as defined by the criteria outlined in Article 4418h, Tex.Rev. Civ.Stat., and the rules promulgated thereunder by the Commission.

The Hospital further alleged that thereafter on November 10, 1976, the Commission voted to deny the application for the five-story shell structure; that the Hospital filed its motion for rehearing which was overruled by operation of law without formal action; that the Hospital fully exhausted its administrative remedies; that the order of November 10, 1976, denying the application for Certificate of Need is invalid and void because such order and its findings are not reasonably supported by substantial evidence of record inasmuch as the only evidence of record is reasonable and competent evidence showing that the Hospital has a need as contemplated by Article 4418h, and the rules and regulations of the Commission promulgated thereunder, and that the Hospital has sufficiently satisfied each of the criteria for the project; that the

order of the Commission is arbitrary and capricious and is a clear and unwarranted abuse of discretion in that (1) there is no evidence to support the order of the Commission; (2) the reliable and probative evidence in the record supports the application of the Hospital for authority to construct the five-story shell and shows a reasonable need for the proposed construction; and (3) the recommendation of the hearing officer and the order of the Commission contained errors, misstatements of fact, unsupported and contradictory findings of fact, and an erroneous finding of law.

The allegations of the Hospital further stated that the action of the Commission demonstrated that the Commission does not favor and does not intend to approve applications to construct shell space and has failed to adopt specific criteria to evaluate projects which include shell space.

By its answer the Commission denied its order was invalid or void; denied that the order was not reasonably supported by substantial evidence or that it was arbitrary or capricious; denied that there was an abuse of discretion by the Commission; and alleged that judicial review of the order is governed by the substantial evidence rule per Article 6252–13a, sec. 19, Tex.Rev.Civ. Stat.

The trial court made no findings of fact inasmuch as such findings were made by the Commission; however, the trial court made the following conclusions of law:

"(1) The Order of the Texas Health Facilities Commission is arbitrary and capricious and not supported by the substantial evidence of record because the substantial evidence, in view of the reliable and probative evidence of record as a whole, established 'need' pursuant to Article 4418h, Tex.Rev.Civ.Stat., and the Rules and Regulations of the Texas Health Facilities Commission promulgated thereunder.

"(2) The Order of the Texas Health Facilities Commission is arbitrary and capricious and is characterized by an abuse of discretion in that there is no reliable or probative evidence of record to support denial of the Application of Baptist General Convention of Texas, d/b/a Hendrick Memorial Hospital; but, on the contrary, all reliable and probative evidence of the record as a whole is supportive of the granting of said Application.

"(3) The Order of the Texas Health Facilities Commission is arbitrary and capricious and is characterized by an abuse of discretion because the Commission has failed to discharge its legislative mandate and legal duty contained in Section 3.10, Article 4418h, Tex.Rev.Civ.Stat., to promulgate rules establishing criteria to determine whether an applicant is to be issued a Certificate of Need for a project involving shelled-in space, and instead has resorted to its 'general' criteria which does not enable a proper evaluation of a proposed 'shell' project."

By its first point of error the Commission contends that the trial court erred in holding that the Hospital had established "need" pursuant to Article 4418h,[1] Tex.Rev. Civ.Stat., and the rules and regulations of the Commission. The Commission's second point says the trial court erred in holding there is no reliable or probative evidence of record to support the denial of the Hospital's application, and its third point complains that the trial court erred in finding that all of the reliable and probative evidence of record supports granting of the application. These three points will be discussed together.

Section 3.01 of Article 4418h (Health Planning and Development Act) provides in part:

"(a) Each person must obtain from the commission a certificate of need or an exemption certificate in accordance with this Act for a proposed project to:

"(1) substantially expand a service currently offered or provide a service not currently offered by the facility;

"(2) construct a new facility or change the bed capacity of an existing facility;

"(3) modify an existing facility;

1. References are to Texas Revised Civil Statutes unless otherwise noted.

"(4) convert a structure into a health-care facility; or

"(5) organize an HMO which requires a new or modified facility.

"(b) For purposes of Subsection (a) of this section:

"(1) the determination of a change in the bed capacity of a facility is based on the bed capacity of the facility, at the time of the application; and

"(2) modification includes the acquisition of land and the acquisition, repair, or replacement of facilities or equipment.

"(c) The commission by rule shall define and determine the terms and conditions under which a project comes within the meaning of Subdivisions (1)–(5) of Subsection (a) of this section."

Section 3.10 of Article 4418h provides in part:

"(a) The commission shall promulgate rules establishing criteria to determine whether an applicant is to be issued a certificate of need for the proposed project.

"(b) Criteria established by the commission must include at least the following:

"(1) whether a proposed project is necessary to meet the health-care needs of the community or population to be served;

"(2) whether a proposed project can be adequately staffed and operated when completed;

"(3) whether the cost of the proposed project is economically feasible;

"(4) if applicable, whether a proposed project meets the special needs and circumstances for rural or sparsely populated areas; and

"(5) if applicable, whether the proposed project meets special needs for special services or special facilities."

The Commission contends that the issue presented is whether the trial court exceeded the proper scope of judicial review in substituting its judgment for that of the Commission in finding and holding that the Hospital had established "need" as a matter of law under Article 4418h. Argument is made by the Commission that it, in concluding that the Hospital had failed to establish "need," properly interpreted the statute and its own rules as "implicitly requiring each applicant for a Certificate of Need to designate a use for the proposed facility," and the Hospital had not done so, that without a designated use the Commission considered it impossible to determine whether the evidence presented by the Hospital had met each of the required criteria, and therefore could not determine whether "need" had been established.

Section 3.15 of Article 4418h provides that an applicant or party who is aggrieved by an order of the Commission granting or denying a Certificate of Need is entitled to judicial review under the substantial evidence rule. Section 1.04 of the same article provides that the Administrative Procedure and Texas Register Act applies to all proceedings under the Health Planning and Development Act except where inconsistent with it.

Administrative Procedure and Texas Register Act, Article 6252–13a, sec. 19(e), provides:

"The scope of judicial review of agency decisions is as provided by the law under which review is sought. Where the law authorizes appeal by trial de novo, the courts shall try the case in the manner applicable to other civil suits in this state and as though there had been no intervening agency action or decision. Where the law authorizes review under the substantial evidence rule, or where the law does not define the scope of judicial review, the court may not substitute its judgment for that of the agency as to the weight of the evidence on questions committed to agency discretion but may affirm the decision of the agency in whole or in part and shall reverse or remand the case for further proceedings if substantial rights of the appellant have been prejudiced because the administrative findings, inferences, conclusions, or decisions are:

"(1) in violation of constitutional or statutory provisions;

"(2) in excess of the statutory authority of the agency;

"(3) made upon unlawful procedure;

"(4) affected by other error of law;

"(5) not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole; or

"(6) arbitrary or capricious or characterized by abuse of discretion or clearly unwarranted exercise of discretion."

The Hospital filed four applications for Certificates of Need: (1) for replacement, expansion and modification of the existing laundry; (2) for the construction of five shelled upper floors to the proposed physical therapy/laboratory building addition; (3) for construction of a two-story building addition to replace existing emergency room and admitting office area; and (4) for construction of a two-story building addition to provide fire escape towers, replacement for existing physical therapy department and existing clinical laboratory department, a 200-seat auditorium for educational purposes, and replacement of administrative offices with enlarged facilities. Three of the applications were granted; only the application for five shelled upper floors was denied.

With respect to the application denied for the five-story shell space, the Commission made the following findings of fact:

A. Need Demand:

(1) That the service area of the hospital included nineteen (19) counties making up the Council of Governments area;

(2) That 30% of the patients of the hospital come from outside Taylor County;

(3) That the 1970 population of Taylor County was 97,853 persons;

(4) That by 1980 the population of Taylor County is projected to be 105,484;

(5) That in 1970 the population of the Hill-Burton area, which includes Taylor, Callahan and Shackelford Counties was 109,381;

(6) That by 1980 the Hill-Burton area population is projected to be 115,809;

(7) That in 1970 the population of the Council of Governments area was 280,081 persons;

(8) That in 1980 the population of the Council of Governments area is projected to decline to 270,692;

(9) That the hospital is a medical/surgical hospital facility located in Abilene, Taylor County, Texas, licensed to operate 464 beds;

(10) That Hendrick Memorial Hospital presently operates 409 to 411 beds;

(11) That during the last full twelve-month period the hospital had an average daily census of 315 patients or an average occupancy rate of 74.5%;

(12) That during the first eleven months of fiscal 1976 the hospital had an average daily census of approximately 318 patients resulting in an average occupancy rate of approximately 77.8% of 409 beds;

(13) That in 1975 the total number of patient days declined 1.98% from 1974;

(14) That in 1976 the total number of patient days is projected to increase .92% over the total for 1975;

(15) That in 1976 the total admissions is projected to decline by 7.42%;

(16) That the proposed project provides for the construction of a five-story 75,920 square foot shelled structure with an unspecified use;

(17) That there is not substantial evidence of record which establishes that the demand for inpatient services is such that the proposed project is required to meet the reasonable health care needs of the community served by the hospital.

The Commission further found that there was no additional manpower required for the proposed project, that the Hospital has the financial ability to finance the project, but there was not substantial evidence of record which established the use of the proposed project or proposed revenues to be derived from it, nor substantial evidence establishing the effect of the proposed project on existing facilities in appellee's service area.

There was no contest filed to the application, nor was there any party present at the hearing before the Commission or the hearing officer who objected to the application.

It is noted that Sec. 3.10 of Art. 4418h provides that the Commission *shall* promulgate rules establishing criteria to determine whether an applicant is to be issued a Certificate of Need for a proposed project. The Commission adopted Rule 315.14.001, entitled Data and Criteria for Certificates of Need, which enumerates the sources from which facts and information shall be obtained in evaluating and considering applications for Certificates of Need. This rule provides that data *which the Commission deems pertinent* shall be obtained from the Texas Department of Health Resources, and the basic geographical areas of consideration will be the county, Hill-Burton service area, regional planning council, health service area, and the state. The rule also provides the criteria set out, "*if applicable*, shall be considered in making a determination to grant or deny a certificate of need." [Emphasis added.] These criteria include health care requirements of the population to be served, the population of the geographical areas, the existing or approved facilities and services, medical statistics, manpower, utilization of facilities or services, and other considerations.

The Commission argues that it considered it impossible to determine whether or not the evidence presented by the hospital met *each* of the requisite criteria since there was no designated use specified by the hospital. Neither the statute nor the Commission rules make reference to the construction of shelled space. The application here provides for five upper floors of shell space above and as a part of the two story physical therapy/clinical laboratory/administrative offices building.

From the language of the statute (Sec. 3.10, Art. 4418h) previously quoted, it would appear that the first three criteria must be affirmatively satisfied by evidence. Assuming that to be the rule then we must examine the record to determine whether there was substantial evidence presented

which supports the Commission's order. The record discloses that Taylor County, Texas, in 1970 had a population of 97,853; the 1980 projected population is 105,484. In 1970 the Council of Governments area (19 counties) had a population of 280,081 persons and the projection for 1980 is 270,692. Approximately 70% of the patients of the hospital live in Taylor County, and 30% live outside the county. In 1965 the hospital had 15,564 total admissions; in 1975 there were 18,523, resulting in an annual growth rate average for the period 1966 through 1975 of 1.73%. The number of patient days in 1965 was 91,506, in 1975 was 115,079, and was projected for 1980 to be 146,674, resulting in an annual growth rate average for the period of 1966–1975 of 2.39%. Laboratory procedures in 1964 were 170,000, in 1975 were 276,501, and were projected for 1976 to be 301,546. Emergency room admissions in 1965 were 10,044, and in 1975 were 16,902. At the time of the hearing the occupancy rate was 79% capacity.

The Commission, adopting the findings of the hearing officer, in order to support its conclusion made findings based on one year only—that in 1975 the total number of patient days declined 1.98% from 1974; however, as pointed out above, there was an average annual growth rate in patient days of 2.39% over the ten year period 1966–1975. The findings of the Commission with reference to average daily census cover only the period of the first eleven months of fiscal 1976, and the previous last full twelve-month period; however, the record reflects that during the ten-year period there were several times when patients were in halls because of a larger census than patient rooms. The hospital had 114 physicians on its staff and anticipated an eight or nine per cent growth annually.

It was estimated that the construction cost would increase at least one per cent per month, and to delay construction of the shelled area to a later time would increase the cost many thousands of dollars. The evidence presented by the hospital also pointed out that to add the shelled area at a time other than when the first two floors

were constructed would cause a disruption of services and interfere with a coordinated and organized traffic flow for efficient use of the new and old space.

In its original application the hospital stated that the shelled area was to be used for patient beds, but at the hearing the hospital indicated that before the construction for the area was completed a new application would be made which would specify the use intended, and that a particular use could not be determined with certainty at the time of hearing.

■ We disagree with the interpretation of the statute made by the Commission that the hospital was required to designate a particular use for the shelled space before a need could be established. Neither the statute nor the Commission rules so require.

■ The substantial evidence rule has been defined in many cases. It has been said that the test in determining whether an administrative decision finds reasonable support in substantial evidence as a whole is such that reasonable minds could not have reached the conclusion that the agency must have reached in order to justify its action. The issue is not whether the agency came to the proper fact conclusion but whether it acted arbitrarily and without regard to the facts. The record is to be considered as a whole, and it is for the court to determine what constitutes substantial evidence. *Railroad Commission v. Shell Oil Co.*, 139 Tex. 66, 161 S.W.2d 1022, 1029–30 (1942); *Hardy Street Investors v. Texas Water Rights Commission*, 536 S.W.2d 85 (Tex.Civ.App.-Waco 1976, writ ref'd n. r. e.).

■ Whether an order of an administrative agency is reasonably supported by substantial evidence is a question of law to be resolved by the court. *Bank of North America v. State Banking Board*, 492 S.W.2d 458 (Tex.1973).

■ The review of an order of an administrative agency is limited to questions of law, i. e., whether the action is within the powers delegated to the agency, and, if so, whether the action is arbitrary, capricious or unreasonable because not reasonably supported by substantial evidence. *Texas State Board of Examiners in Optometry v. Carp*, 388 S.W.2d 409 (Tex.1965).

■ While the test is whether the evidence as a whole is such that reasonable minds could not have reached the conclusion that the agency must have reached in order to justify its action, *Auto Convoy Co. v. Railroad Commission*, 507 S.W.2d 718, 722 (Tex.1974); *Texas Construction Service Co. v. Railroad Commission*, 535 S.W.2d 393 (Tex.Civ.App.-Waco 1976, writ ref'd n. r. e.), "[n]either an administrative agency nor a reviewing court upon appeal can pick and choose among the bits of the evidence in order to find some particular mix which will support a predetermined conclusion." *Cline v. Firemen's Relief & Retirement Fund, Trustees*, 545 S.W.2d 895, 897 (Tex.Civ. App.-Beaumont 1976, writ ref'd n. r. e.).

Apparently the Commission chose to support its order of denial of a Certificate of Need by relying upon the projected decline of population in the Council of Governments area and the projected decline in total admissions in 1976. Since 70% of the patients are residents of Taylor County a projected decline in population in the 19-county area was more than offset by a projected increase in population in Taylor County. The statistics on admissions, patient days and daily census are more representative of the trend when viewed from several years experience rather than a recent 11- or 12-month period.

There would be no present use of the space which would be only exterior construction with stubbed-in utilities to the various floors, nor would there be any present need for manpower. There would be no revenue. The space would not be used for any purpose without the hospital applying again to the Commission for approval. The application in question here is *for the construction* of a shelled-in area *and not for the use* of it.

■ Considering the record as a whole it is our view that the substantial rights of the hospital were prejudiced because the Commission's findings, inferences and con-

clusions were not reasonably supported by substantial evidence in view of the reliable and probative evidence in the record as a whole, and were arbitrary, capricious and characterized by an abuse of discretion. Appellant's first three points are overruled.

■ By its fourth point the Commission says that the trial court erred in holding that the Commission abused its discretion by failing to discharge its duty as set out in the statute and its rules in that it had not promulgated specific rules governing the issuance of Certificates of Need for projects involving shelled-in space. Appellant maintains in its brief that it, the Commission, is unable to determine whether there is a need because the Hospital has not designated a specific use for the shelled-in area for the future. We agree with the trial court that the Commission should promulgate a rule which applicants could follow concerning shelled-in space and whether a specific use of such shelled-in space must be specifically designated in advance at the time the application is submitted. Appellant's fourth point is overruled.

■ From the record as a whole, and in considering the brief of the Commission, it is our view that the application was denied in the instant case because the Hospital would not commit itself as to the specific use to be made in the future of the shelled-in area, and that such denial was arbitrary and capricious.

By its final point, the Commission contends that it was error for the trial court to reverse its order denying a Certificate of Need and remand the matter to the Commission with instructions to approve and grant a Certificate of Need. We overrule this point.

■ A trial court may properly review an order of the Commission, and it may determine that the order was not supported by substantial evidence presented to the trial court or was arbitrary and capricious. The trial court may remand the cause to the Commission for further proceedings if there is a need for further action which involves the exercise of discre-

tion by the Commission, but the court does not have authority to substitute its own discretion for that of the Commission. *Marrs v. Railroad Commission*, 142 Tex. 293, 177 S.W.2d 941, 950 (1944); *Fire Department of City of Fort Worth v. City of Fort Worth*, 147 Tex. 505, 217 S.W.2d 664, 666–7 (1949); *Lewis v. Metropolitan Savings & Loan Association*, 550 S.W.2d 11, 16 (Tex. 1977); Art. 6252–13a, sec. 19(e), supra. However, for a court judgment to have a practical effect, when there are no further discretionary proceedings necessary the judgment of the court setting aside the Commission's order carries with it the converse, i. e., that the Commission should grant the Certificate of Need. *Railroad Commission of Texas v. Texas Company*, 298 S.W.2d 666, 669 (Tex.Civ.App.-Austin 1957, writ ref'd n. r. e.). We, therefore, hold that the trial court's judgment instructing the Commission to grant a Certificate of Need was proper and should be affirmed. *Gerst v. Cain*, 388 S.W.2d 168 (Tex.1965) [Civil Appeals opinion 379 S.W.2d 699].

The judgment of the trial court is affirmed.

MOORE, Justice, dissenting.

I respectfully dissent. The Texas Health Facilities Commission was created by the 64th Legislature. The Legislature, responding to the federal mandate of Public Law 93–641, passed Article 4418h known as the Texas Health Planning and Development Act. The stated purpose of the Act is to insure that health care services and facilities are made available to all citizens in an orderly and economical manner, and further to assure that appropriate health planning activities be undertaken and implemented and that health care services and facilities be provided in a manner that is cost effective and is compatible with the health care needs of the various areas of population of the state. The general duties of the Commission have heretofore been set forth in the majority opinion and will not be restated here. In addition to such general duties, the Commission has promulgated de-

tailed rules expanding on the criteria mandated by the statute.

Generally, in order for a Certificate of Need to establish "need," the applicant must present sufficient evidence to justify an affirmative finding as to each of the applicable criteria designated in sec. 3.10 of Article 4418h, V.T.C.S., and the Commission's Rule 801. However, the application of the Hospital, because of its peculiar characteristics, created a case of first impression in which the Commission was requested for the first time to consider an application for the expansion of an existing facility in which the Applicant refused to designate the use to which the additional five story shell space was to be utilized. Although the Hospital had originally specified in its application that the shelled-in space was intended to be used to house 200 additional hospital beds, at the hearing on the application counsel for the Applicant informed the hearing officer that the Applicant no longer intended to designate that the shelled-in space would be used to house hospital beds. Rather, the Hospital desired only to apply for the shelled-in space with no intended use designated in the present application. Such use would be designated in subsequent applications for Certificates of Need regarding the shelled-in space when the Hospital made the determination of what function the space would be used for.

The Commission, in concluding that the Applicant had failed to establish "need" interpreted Article 4418h, sec. 3.10, supra, and Rule 801 as implicitly requiring each applicant for a Certificate of Need to designate the use expected to be made of the proposed facility. It is clear from the Hearing Officer's recommendation and the order of the Commission, that both the Hearing Officer and the Commissioners concluded that it would be impossible for them to determine whether the evidence presented by the Applicant had met each of the requisite criteria since there was nothing before the Commission showing the designated use of the shelled-in space. Since under the Commission's interpretation of the statute and the rules this determination could not be made, the Commission conclud-

ed that it could not determine whether "need" had been established and therefore denied the application on this ground. However the trial court, as well as the majority of this court, in reversing the order of the Commission concluded that it was not necessary for the Hospital in its application to build the five story shelled-in space to designate a particular use to which the space was to be devoted in order to establish need. Accordingly, the trial court, as well as the majority of this court, held that the Commission erred in interpreting sec. 3.10 of Article 4418h and Commission Rule 801 as requiring an applicant for a Certificate of Need for shelled-in space to designate the proposed use of such space. I cannot agree with this holding.

In the absence of any showing as to the use of the proposed facility, it would be absolutely impossible for the Commission to apply the criteria for review as outlined by sec. 3.10 of Article 4418h. According to *Webster* "need" refers to an urgent requirement of something essential or desirable that is lacking. Therefore "need" must have an object. Need implies use. In the absence of being apprised of the proposed use, how could the Commission determine whether the five floors of shelled-in space would be necessary to meet some specific health care need of the community or population, whether it could be adequately staffed when completed, and whether the cost is reasonably justified considering the anticipated revenue?

The Commission's interpretation of its own statutes and rules may be overturned only where the court finds the ruling to be contrary to one of the categories designated in sec. 19(e) of the Administrative Procedure and Texas Register Act. Article 6252–13(a), V.T.C.S. In reversing the Commission's ruling the trial court apparently determined that the Commission's interpretation of its own statute and rules as requiring a designated use for shelled-in space was (1) affected by an error of law, or (2) that the ruling was arbitrary, capricious or characterized by an abuse of discretion or by a clearly unwarranted exercise of discretion. I cannot agree with either conclusion.

Where an administrative board is faced with the problem of construing and interpreting a statute, the board may exercise its administrative judgment or discretion in interpreting an applicable law. *Pension Board of Police Officers Pension System of City of Houston v. Colson*, 492 S.W.2d 307 (Tex.Civ.App.-Beaumont 1973, writ ref'd n. r. e.). Where an administrative agency is called on to make an initial interpretation of a statute, the criteria to be used by the courts in determining the validity of the ruling is whether the agency's construction has a reasonable basis in law. *Kelso Marine, Inc. v. Hollis*, 316 F.Supp. 1271, 1272 (S.D.Tex.1970), affirmed 449 F.2d 342 (5th Cir. 1971). Upon applying the foregoing rules of law I am of the opinion that the Commission's interpretation of its statute and rules construing them to mean that the applicant for a Certificate of Need is required to designate the intended use was neither arbitrary or capricious nor affected by any error of law. It appears to me that the Commission's interpretation was grounded upon a reasonable basis in law and that the requirement of a designation of use for shelled-in space is in harmony with the general objectives of the Texas Health Planning and Development Act. See *Jefco, Inc. v. Lewis*, 520 S.W.2d 915 (Tex.Civ.App.-Austin 1975, writ ref'd n. r. e.). Some showing of how the proposed medical facility was to be used must be made. Otherwise there would be no way for the Commission to accurately determine what type of medical facility the shelled-in structure would be needed for in the future. To hold that the Commission is required to consider and pass on applications of Certificates of Need even though no use of the facility is designated would not only thwart the legislative intent expressed in the Act, but would also result in an administrative nightmare.

Further, I am unable to agree with the holding that the Commission erred in failing to promulgate specific rules governing the issuance of Certificates of Need on projects involving "shelled-in" space. As I view the record, the decision as to whether to promulgate a rule dealing with applica-tions for shelled-in space is a matter lying within the sound discretion of the Commission. As the Supreme Court said in the *Securities & Exchange Commission v. Chenery Corporation*, 332 U.S. 194, 202–03, 67 S.Ct. 1575, 1580, 91 L.Ed. 1995 (1947), in addressing the issue of the Security & Exchange Commission's authority to initiate a new rule through the adjudicative rather than a rule making process, the Court stated:

"Not every principle essential to the effective administration of a statute can or should be cast immediately into the mold of a general rule. Some principles must await their own development, while others must be adjusted to meet particular, unforeseeable situations. In performing its important functions in these respects, therefore, an administrative agency must be equipped to act either by general rule or by individual order. To insist upon one form of action to the exclusion of the other is to exalt form over necessity.

". . . [T]he agency must retain power to deal with the problems on a case-to-case basis if the administrative process is to be effective. There is thus a very definite place for the case-by-case evolution of statutory standards. And the choice made between proceeding by general rule or by individual, ad hoc litigation is one that lies primarily in the informed discretion of the administrative agency."

Although the Board has statutory authority to prescribe rules and regulations, the choice between proceeding by a general rule or by individual ad hoc litigation is one that lies primarily within its informed discretion. *Hicks v. Physical Therapists Examining Board*, 221 A.2d 712, 715 (D.C.App.1966), affirmed, 129 U.S.App.D.C. 347, 394 F.2d 972 (1967) cert. denied, 390 U.S. 987, 88 S.Ct. 1181, 19 L.Ed.2d 1289 (1968). In regard to the Hospital's application for a Certificate of Need without designating use, the Commission chose to deal with the issue of shelled-in space by applying the Commission's interpretation through an adjudica-

tive proceeding. In so doing, the Commission acted well within the bounds of its "informed discretion." Essentially, it is the Hospital's contention that the Commission was obligated to promulgate specific rules for applications of Certificates of Need for shelled-in space with no designated use. I do not believe the Commission was obligated to promulgate rules dealing with applications for Certificate of Need for shelled-in space with no designated use. To promulgate rules dealing with non-designated use applications for shelled-in space would be totally inconsistent with the legislative intent set forth in the Health Planning & Development Act.

Finally, I cannot agree with the holding that the Commission's ruling was not supported by any substantial evidence. As I view the record, the substantial evidence rule is not the point in this case. Assuming arguendo, however, that the Commission was obligated to determine need even though the application for the shelled-in space contained no designated use, I am of the opinion that there is substantial evidence to support the Commission's finding. Specifically, the Commission found that the Applicant failed to establish that the demand for inpatient services is such that the proposed five story shelled-in space was necessary to meet the reasonable health care needs of the community to be served. Commission's Order AH76–0601–024, R.P. Vol. 1, D, 2. The test of substantial evidence, as correctly stated by the majority, is whether the evidence as a whole is such that reasonable minds could not have reached the conclusion that the agency reached in order to justify its action. In refusing the application, the Commission relied upon four factors in its finding that the Applicant failed to establish need for the shelled-in space. These four factors showed the following: (1) that in 1980 the population of the council of governments area served by the Hospital is projected to decline from 280,000 persons to approximately 271,000 persons in 1980; (2) that during the first eleven months of fiscal 1976 the Hospital had an average daily census of approximately 318 patients, resulting in an average occupancy rate of approximately 77.8 percent of 409 beds; (3) that in 1975 the total number of patient days declined 1.98 percent from 1974; and (4) that in 1976 the total admissions is projected to decline by 7.42 percent. This combination of facts showing a decline in hospital admissions from 1975 to 1976, plus an overall decline in total number of patient days from 1974 to 1976 indicates that both admissions and patient days have peaked barring some unforeseen increase in the length of patient stays or unforeseen population increase or disaster. Therefore the Commission could have reasonably concluded that as to the need/demand criteria Appellant Hospital had not carried its burden of showing that the future demand for inpatient services would be so great that the five story shell would be necessary to meet the reasonable health needs of the community to be served.

While the record shows that the proposed shelled-in space, costing approximately two million dollars, is to be financed by a combination of private contributions and loans, the monies to pay off the loans on non-income producing space must come from other revenues. Appellee offered no evidence demonstrating how the revenues were to be derived from the proposed project. Such a prospect raises the specter of increased hospital cost generally and was a proper matter for consideration in determining whether the project was economically feasible. Further, the Appellee failed to put on any evidence of the availability of future manpower to staff future needs of the facility. The type of staff necessarily depends on the ultimate use of the proposed facility, and availability of staff cannot be determined unless the use of the facility is known. Adequate available manpower is a statutorily mandated prerequisite to the granting of a Certificate of Need. The Commission would not be authorized to grant a Certificate of Need unless there is some reasonable certainty that adequate manpower to staff the facility will be available in the future. Viewing the record as a whole, I am of the opinion that there was substantial evidence to sustain the ruling of the Commission denying the Certificate.

Accordingly, I would reverse the judgment of the trial court and render judgment sustaining the ruling made by the Commission.